[Civ. No. 19662. Fourth Dist., Div. Two. Mar. 30, 1979.]

ALFREDO LOPEZ, Plaintiff and Appellant, v.
KELVIN K. LARSON, Defendant and Respondent.

384

COUNSEL

Jerome Cohen, George C. Lazar, Mary H. Mocine and William W. Monning for Plaintiff and Appellant.

Best, Best & Krieger, Charles D. Field and Richard S. Ruben for Defendant and Respondent.

OPINION

**KAUFMAN, Acting P. J.**—Plaintiff appeals from a judgment dismissing the action because of his failure to prosecute it to trial within two years (Code Civ. Proc., § 583, subd. (a)).[1]

The complaint in this action was filed and summons issued on May 28, 1974. Named as defendant was Kelvin K. Larson (defendant), a grower of table grapes in Coachella. The plaintiffs were Alfredo Lopez and Jose

---

[1]Code of Civil Procedure section 583, subdivision (a) provides in pertinent part: "The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed."

David Perez. It was alleged as to each plaintiff that he was a United Farm Workers Union steward and a farm worker employed by defendant, earning $50 a day; that in March and April 1974, defendant commenced a campaign to coerce his employees to withdraw from the UFW and to join the Western Conference of Teamsters; that on April 10, 1974, defendant wrongfully discharged each plaintiff[2] because of his refusal to withdraw from the UFW and to join the Teamsters. Each plaintiff sought an injunction requiring defendant to reinstate him, $50 per day in damages for loss of wages from the date of wrongful discharge to the date of reinstatement and $100,000 punitive damages. Named as attorneys for plaintiffs on the complaint were "COHEN, CARDER & ENGELHARDT" at a post office address in Indio. The complaint was dated April 13, 1974, and signed: "COHEN, CARDER & ENGELHARDT By Sanford N. Nathan." These attorneys were also members of the legal staff of UFW.

Nothing whatever was done by plaintiffs' attorneys in the prosecution of the case for two full years. In May 1976 Mr. Nathan, who in the interim had moved to Salinas, asked Attorney Mary Mocine, who by then had joined the UFW legal staff in Salinas, to assume responsibility for prosecution of the action. On June 12, 1976, Ms. Mocine addressed a memorandum to Ms. Laura Safer, a volunteer at the UFW field office in Coachella, informing her of the necessity of serving defendant Larson but indicating that Ms. Safer would have to have a new summons issued because the original summons was on an outdated form. Ms. Safer made several trips to the court clerk's office in an attempt to get a new summons issued but met with some complexities, which, combined with her excessive busyness with other matters, resulted in her being unable to effect service on defendant by the time she had to leave Coachella near the end of July. Ms. Nancie Jarvis, a volunteer paralegal worker for UFW, thereafter undertook to see that service was made and finally effected service on defendant on September 23, 1976, nearly two years and four months after the complaint was filed and the summons issued.

After serving defendant, plaintiffs took no further action in the case so far as the record discloses for more than two months more. On December 1, 1976, two years and six months after the complaint was filed, defendant filed a motion to dismiss the action for plaintiffs' failure to prosecute it to trial within two years. Amended notices of motion were thereafter filed. On January 26, 1977, plaintiffs' opposition to the motion to dismiss was filed. It was signed by Attorney Mocine and listed Cohen, Carder, Engelhardt & Mocine with a post office box address in Salinas as

---

[2]As to plaintiff Perez the date alleged was April 11, 1974.

attorneys for plaintiffs. Following the filing of supplemental points and authorities by defendant, a hearing was held on February 14 at which time the matter was submitted. On February 24 the motion to dismiss was denied by an unsigned minute order.

Approximately two weeks later on March 9, 1977, defendant filed a motion, denominated a motion for reconsideration, in which he sought not really reconsideration but a clarification as to the bases for the order and as to whether the court had intended the ruling to be with or without prejudice. At the hearing on the motion on March 31, 1977, the court orally stated its recollection of its reasons for denying the motion to dismiss and stated that the order denying the motion was intended to be without prejudice. At the conclusion of the hearing counsel for defendant stated to the court in the presence of plaintiffs' counsel: "Ultimately, given the guidelines that you just suggested we may at a further point wish to present additional factual consideration as to the issues you have addressed. . . ."

On May 24, 1977, defendant filed a motion for reconsideration of his original motion to dismiss. On June 10, plaintiffs filed a request for voluntary dismissal of the action as to plaintiff Perez only and filed declarations and points and authorities in opposition to defendant's motion for reconsideration. The motion for reconsideration was argued that same day and submitted. By unsigned minute order dated July 21, 1977, the motion for reconsideration was granted and the motion to dismiss for lack of prosecution was set for hearing. On September 23, 1977, the matter was heard and submitted. The motion to dismiss was granted by an unsigned minute order dated September 28, 1977. On October 6, the court signed the judgment (denominated an order) dismissing the action. On October 26, plaintiff[3] moved for reconsideration of the judgment of dismissal. Plaintiff's motion was denied November 17, 1977.

Plaintiff contends that the trial court erroneously granted defendant's motion for reconsideration and, if not, that the court abused its discretion in dismissing the action or, alternatively, that in exercising its discretion it employed an erroneous legal standard, considered and gave weight to several irrelevant factors, and failed to consider one or more factors required to be considered by rule 203.5(e) of the California Rules of Court. We have concluded that plaintiff's contentions are essentially without

---

[3]The action having been voluntarily dismissed as to plaintiff Perez, "plaintiff" refers to plaintiff Lopez alone.

merit and that no abuse of discretion or erroneous exercise of discretion is demonstrated.

### Propriety of Reconsideration

█ Plaintiff asserts that the facts upon which defendant sought reconsideration of the motion to dismiss were the same as those disclosed to the trial court in connection with the original motion to dismiss and that there is no authority for a motion to reconsider based on the same factual showing as that originally made. Although we are quite certain that, properly analyzed, they are reconcilable, the cases do evince some confusion about motions for reconsideration, particularly when the ruling on the original motion was granted and resulted in an immediately appealable order or judgment. (See, e.g., *Lavrischeff* v. *Blumer,* 77 Cal.App.3d 406, 409-410, 411 [143 Cal.Rptr. 567]; *Farrar* v. *McCormick,* 25 Cal.App.3d 701, 705-706 [102 Cal.Rptr. 190];[4] cf. *Daley* v. *County of Butte,* 227 Cal.App.2d 380, 388 [38 Cal.Rptr. 693]; see Goodman, *The Power of the Trial Judge to Change a Prior Ruling on a Motion* (1970) 45 State Bar J. 483.) █ It is clear, however, that where a motion has been denied and the resulting order is nonappealable, a court may in its discretion permit a renewal of the motion and reconsider its original ruling even if the factual basis for the motion to renew or reconsider is the same as that supporting the original motion. (*Kenney* v. *Kelleher,* 63 Cal. 442, 444; *Big Bear Mun. Water Dist.* v. *Superior Court,* 269 Cal.App.2d 919, 928 [75 Cal.Rptr. 580]; *Josephson* v. *Superior Court,* 219 Cal.App.2d 354, 358-359 [33 Cal.Rptr. 196]; *City & County of S. F.* v. *Muller,* 177 Cal.App.2d 600, 603 [2 Cal.Rptr. 383]; see *Dunas* v. *Superior Court, supra,* 9 Cal.App.3d at p. 239 [quoted in fn. 4, *ante*]; cf. *Harth* v. *Ten Eyck,* 16 Cal.2d 829, 832-834 [108 P.2d 675].)

In *Harth* v. *Ten Eyck, supra,* the California Supreme Court upheld the ruling on a motion for reconsideration, construing it as a motion to

---

[4]In *Farrar,* citing *Dunas* v. *Superior Court,* 9 Cal.App.3d 236, 239 [87 Cal.Rptr. 719], the court stated: "No statutory or other authority exists for a bare 'motion to reconsider.' " (25 Cal.App.3d at p. 705.) In *Dunas,* however, immediately after stating that there is no statutory authority for a motion for reconsideration, the court, quoting from *San Francisco Lathing. Inc.* v. *Superior Court,* 271 Cal.App.2d 78, 80-81 [76 Cal.Rptr. 304], stated: " '[I]n the technical sense there is no authority in the code for a motion for reconsideration. The motion to reconsider the decision on a motion has, however, been recognized by the appellate courts in limited situations. Thus, appellate courts have always recognized that a court has power, on a subsequent motion, to reconsider its prior decision *denying* a similar motion. [Citations.] In such cases the subsequent motion is considered as a *renewal* of the previous motion. [Citations.]' " (9 Cal.App.3d at p. 239; italics in original.)

renew, notwithstanding that the original ruling on the motion resulted in what was probably an appealable order. (See 16 Cal.2d at p. 832.) Said the court: "When the motion to vacate was before the court on the conflicting affidavits already on file, the court's power then to weigh the conflicts was the same as upon first consideration thereof. In other words, the power of the court to resolve the conflicts was not exhausted by its conclusions on the order of denial, but it had the power to re-examine the evidence and arrive at a different conclusion, if it thought the ends of justice would best be served thereby. Unless an abuse of discretion was committed, the final order of the court should be permitted to stand." (16 Cal.2d at pp. 833-834.)

As this court stated in *Big Bear Mun. Water Dist.* v. *Superior Court, supra*: "It is settled that a court has jurisdiction to reconsider its ruling on a motion after having once denied it. [Citations.] It is true that where no new grounds are shown a court is not obliged to grant a motion for reconsideration [citations], but this is not the equivalent of saying that a court has no jurisdiction to reconsider where no new grounds are shown. In the case under review, the record reveals that the judge was of the view that his original ruling was intended to be without prejudice to a motion to reconsider." (269 Cal.App.2d at p. 928.) Similarly, in the case at bench, the court expressly clarified its original order of denial by stating that it was intended to be without prejudice.

Plaintiff's reliance on Code of Civil Procedure section 1008 is misplaced. As it read at the time of the proceedings below[5] section 1008 did not purport to be an authorization statute, nor did it purport to prescribe the requirements for a motion to renew. It simply provided that when a subsequent application for the same order upon an alleged different state of facts was made, the application was required to disclose the prior application, the judge to whom it was presented, and what new facts were claimed to be shown. It only required disclosure. It did not purport to limit the court's authority to entertain the renewal of a motion to cases in which there was claimed to be a different state of facts, new facts, or newly discovered facts.

---

[5]At the time of the proceedings in the trial court Code of Civil Procedure section 1008 read in pertinent part: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted conditionally, or on terms, and subsequent application for the same order, upon an alleged different state of facts, shall be made, it shall be shown by affidavit what application was before made, when and to what judge, what order or decision was made thereon and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion." In 1978 the section was amended. (Stats. 1978, ch. 631.)

Defendant's motion for reconsideration was based, not upon the ground that a different state of facts existed but upon the ground "that additional factual and evidentiary material is being presented for the Court's consideration, and that based upon the Court's prior clarification of its ruling, additional legal authorities are provided." Additional factual material was presented. As is later discussed more fully in connection with another issue, the sole justification offered by plaintiff for the two-year-four-month delay in serving defendant and the two-year-six-month delay in taking any steps whatever toward prosecution of the case was that Mr. Nathan, the attorney who signed the complaint, and, perhaps, Mr. Cohen, another of plaintiff's attorneys of record, were too busy in representing UFW and other clients to pursue this action. The motion for reconsideration was accompanied by declarations from Attorneys Richard Ruben and Charles Field which set forth facts indicating that Mr. Nathan had ample opportunity to serve defendant Larson and that, moreover, the legal staff of UFW consisted of many attorneys and many paralegal assistants, any of whom could have taken steps to serve defendant and advance the case toward trial. In addition, at the hearing on the renewed motion, defendant's attorney explained to the court that, contrary to the court's apparent prior understanding,[6] a libel suit by Larson against Penthouse magazine based on reported statements by Cesar Chavez had no connection with the instant lawsuit except that one of Chavez' statements may have referred to Larson's discharging Lopez and Perez.

Finally, under this head, plaintiff argues the trial court abused its discretion in granting the motion for reconsideration because following its original order denying the motion to dismiss and in reliance thereon plaintiffs undertook considerable discovery and filed an at-issue memorandum and, futhermore, on May 11, 1977, defendant deposed plaintiff Lopez. To the extent that plaintiff's factual assertions are correct, we agree they were matters properly to be considered by the court. Presumably they were. The record indicates there was a hearing on the motion for reconsideration in which the propriety of reconsideration was considered separately from the subsequent hearing on the merits of the renewed motion to dismiss. The record contains no transcript of that hearing. As pointed out in *Denham v. Superior Court,* 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]: " 'A judgment or order of the lower court

---

[6]In stating its recollection of its reasons for denying the original motion, the court indicated its belief that a libel suit by Larson against Penthouse magazine involved some of the same issues of fact and perhaps ought to be consolidated with this case.

is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (Italics omitted.) (See also *Applegate Drayage Co.* v. *Municipal Court*, 23 Cal.App.3d 628, 633 [100 Cal.Rptr. 400].)

In any event, the factors mentioned did not require the trial court to deny the motion for reconsideration. The fact that defendant deposed plaintiff Lopez on May 11, 1977, was of little significance. Defendant's original motion to dismiss had been denied, albeit without prejudice; plaintiffs had belatedly commenced discovery proceedings; and defendant was certainly entitled to depose Lopez to protect himself against the possibility that his motion to reconsider the motion to dismiss might be denied. (See *City of Los Angeles* v. *Gleneagle Dev. Co.*, 62 Cal.App.3d 543, 564, fn. 17 [133 Cal.Rptr. 212].)

While it is true that after defendant filed his motion to dismiss, plaintiffs engaged in a flurry of discovery activity, plaintiff's claim that this was done in reliance on the court's denying the motion to dismiss in the first instance is for the most part contradictory to the record. The record discloses that the flurry of discovery activity occurred in the three-month period after the filing of the original motion to dismiss and *prior* to its denial. Within approximately two weeks after the court denied the original motion, defendant filed his motion for clarification which resulted in the court's indicating that the denial was intended to be without prejudice. Any activity thereafter on the part of plaintiff can hardly be said to have been in reliance on the original order of denial, particularly in view of the fact that at the conclusion of the hearing on the motion for clarification, counsel for defendant informed the court and counsel for plaintiff that he would in all probability attempt to renew the motion and present additional information. And, of course, a belated manifestation of diligence does not necessarily operate to excuse an earlier unjustified protracted delay. (*Gunner* v. *Van Ness Garage*, 150 Cal.App.2d 345, 348 [310 P.2d 32].)

We conclude there was no impropriety or abuse of discretion in the court's reconsidering the motion to dismiss.

*Court's Exercise of Discretion
on the Merits of the Motion to Dismiss*

*Employment of Erroneous Legal Standard*

Pointing to the finding implicit in the minute order granting the motion to dismiss[7] and expressly recited in the judgment of dismissal[8] that "[p]laintiff has not shown sufficient or good cause for the lengthy delay," plaintiff contends that the court's exercise of discretion was based on the legal supposition that plaintiff had the burden of proving justification for the delay and that supposition was erroneous in view of the decision in *Denham* v. *Superior Court, supra,* 2 Cal.3d 557, which plaintiff asserts removed from the party resisting a motion to dismiss for lack of diligent prosecution any duty to demonstrate justification for the delay. Plaintiff misinterprets *Denham.* Except perhaps in one narrow sense, *Denham* did not absolve plaintiffs from all obligation to justify protracted delay.

Prior to *Denham,* a number of Court of Appeal decisions had held that a trial court was *required* to grant a defendant's motion to dismiss if

---

[7]The minute order reads in pertinent part:

"A review of the records reveals that Plff. took no action in the prosecution of this matter until service of the summons and complaint almost two years and four months after the filing thereof. In fact nothing in addition was done on the record at least, until the filing of this motion for dismissal. Moreover, the Court need not assume prejudice to the Deft. Fifty dollars a day alleged damages is, indeed, substantial prejudice when the Plff. delays 2⅓ years.

"However this motion was previously denied without prejudice because Denham vs. Superior Court, 2 Cal. 3rd 557, 566 holds that the exercise of the trial courts [*sic*] sound discretion cannot give rise to a miscarriage of justice. At the time the motion was denied facts relating to a miscarriage of justice were not available. None have been presented since, in support of the Plff's. position. A co-plaintiff has dismissed; no evidence has been presented to support the proposition that Mr. Lopez, the Plff., has not been employed or employable as a farm laborer in the interim. This must tip the balance in favor of dismissal."

[8]The judgment reads in pertinent part: "After weighing the oral arguments and written pleadings, the Court makes the following findings: [¶] This action was filed by plaintiffs on May 28, 1974, but the summons and complaint were not served on defendant until September 23, 1976, a delay of approximately two years, four months. There was no activity in this matter during this period of delay. Subsequent to the service of the summons and complaint, plaintiff Jose David Perez voluntarily withdrew from this action, and filed a Request for Dismissal as to the entire action for himself. . . . [¶] A plaintiff has the duty under the law of California to use due diligence to expedite his case to a final determination. *Lowe* vs. *Thomas* (1970) 11 C.A.3d 867. Prejudice to a defendant from plaintiff's lengthy delay is inherent and presumed under the California case law. *Dunsmuir Masonic Temple* vs. *Superior Court* (1970) 12 CA.3d 17. In this case, actual prejudice is apparent in that the complaint alleges damages that continue to accrue at $50 per day. Plaintiff has not shown sufficient or good cause for the lengthy delay. Thus the Court finds a dismissal for lack of prosecution to be proper."

substantial delay was shown and the plaintiff failed to oppose the motion by filing an affidavit or declaration making an "adequate" showing of good cause for the delay. (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 563, and cases there mentioned.) In *Denham* the Supreme Court held simply that these Court of Appeal decisions were incorrect and that if there were anything before the court, including without being limited to the papers in the file, tending to justify or explain the delay, the court was not *required* to grant the defendant's motion to dismiss notwithstanding the fact that the plaintiff failed to file an opposing declaration or affidavit and that the trial court could and should under such circumstances exercise its discretion in ruling on the motion. (*Denham* v. *Superior Court, supra,* 2 Cal.3d at pp. 563-564; see *Woolfson* v. *Personal Travel Service, Inc.,* 3 Cal.3d 909, 912-913 [92 Cal.Rptr. 286, 479 P.2d 646]; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at pp. 561-562; *Applegate Drayage Co.* v. *Municipal Court, supra,* 23 Cal.App.3d at p. 632; *Dunsmuir Masonic Temple* v. *Superior Court,* 12 Cal.App.3d 17, 20-21 [90 Cal.Rptr. 405].) ■ ■ As the court in *Denham,* quoting the language of earlier cases, plainly stated: " ' "It is only when there is an entire absence of any showing constituting good cause presented in the Superior Court upon the hearing of the motion to dismiss that a writ of mandate to compel the dismissal of the action may properly issue." ' " (2 Cal.3d at p. 564; see also *Woolfson* v. *Personal Travel Service, Inc., supra,* 3 Cal.3d at pp. 912-913; *Applegate Drayage Co.* v. *Municipal Court, supra,* 23 Cal.App.3d 628; *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at p. 21.[9]) ■ Thus the *Denham* decision relieved plaintiffs of the obligation to justify demonstrated delay only in a narrow sense: if something of which the trial court can take cognizance tends to explain or justify the delay shown,

[9]The dicta in *United Farm Workers National Union* v. *International Brotherhood of Teamsters,* 87 Cal.App.3d 225, 234-235 [150 Cal.Rptr. 761], criticizing the *Dunsmuir* court's analysis of *Denham* and suggesting that *Dunsmuir* be disapproved notwithstanding similar authoritative analyses in the *City of Los Angeles* v. *Gleneagle* and *Applegate* cases was itself the product of defective analysis. The court in the *United Farm Workers* case noted the language in *Denham* quoted from earlier cases that it is only where there is an entire absence of any showing constituting good cause that a writ of mandate to compel the dismissal of the action may properly issue: but. emphasizing the word "may," the *United Farm Workers* court stated that even where there is an entire absence of any showing of good cause the trial court may still exercise its discretion. Since the problem does not confront us. we make no attempt to evaluate that conclusion. But the reliance placed on the word "may" was improvident. What the court in *Denham* said was that *a writ of mandate "may" properly issue.* However, a writ of mandate may properly issue only when the trial court must "exercise its discretion" in only one way, that is, when in reality the court must decide in one way and has no discretion in the matter. (*Hilmer* v. *Superior Court,* 220 Cal. 71, 73 [29 P.2d 175]; *Applegate Drayage Co.* v. *Municipal Court, supra,* 23 Cal.App.3d at p. 636: see also *Mannheim* v. *Superior Court,* 3 Cal.3d 678, 685 [91 Cal.Rptr. 585, 478 P.2d 17].)

the plaintiff is relieved of the absolute duty imposed by some of the earlier cases to file a declaration or affidavit showing good cause on penalty of having the motion to dismiss automatically granted. However, it has always been true and remains true that if, in the exercise of its discretion, the trial court determines that insufficient good cause or justification has been shown for protracted delay, it may, and properly should, grant the motion to dismiss. (See, e.g., *Sanborn v. Chronicle Pub. Co.*, 18 Cal.3d 406, 418 [134 Cal.Rptr. 402, 556 P.2d 764]; *Moore v. El Camino Hosp. Dist.*, 78 Cal.App.3d 661, 664 [144 Cal.Rptr. 314]; *Price v. Grayson*, 276 Cal.App.2d 50, 54-55 [80 Cal.Rptr. 602]; *Sprajc v. Scandinavian Airlines System, Inc.*, 240 Cal.App.2d 935, 938 [50 Cal.Rptr. 181]; *Knight v. Pacific Gas & Elec. Co.*, 178 Cal.App.2d 923, 930, 933 [3 Cal.Rptr. 600]; *Gunner v. Van Ness Garage, supra*, 150 Cal.App.2d at pp. 347-348; *Sawyer v. Palmer*, 121 Cal.App.2d 370, 370-371 [263 P.2d 475].) It is not contended, nor, in view of the record could it be contended, that the trial court felt it had no discretion but to dismiss the action as was the situation perceived by the court in *United Farm Workers National Union v. International Brotherhood of Teamsters, supra*, 87 Cal.App.3d at pp. 236, 237-238.) In the case at bench the trial court expressly stated that in ruling on the original motion it had changed its mind seven times, and throughout the proceedings it repeatedly made reference to the discretionary nature of the determination to be made.

*Abuse of Discretion*

Plaintiff's contention that the trial court abused its discretion in dismissing the action is founded upon two premises: (1) that plaintiff established ample justification or good cause for the protracted delay in serving defendant and commencing meaningful prosecution of the case and (2) that defendant was in no way detrimentally affected or prejudiced by the delay. Neither premise is sound.

Plaintiff first asserts that the trial court conclusively determined that ample justification for the delay had been established when it denied defendant's original motion to dismiss. Not so. In the first place, when the court several weeks later stated its recollection of its reasons for denying the motion, it was not at all clear that the court felt that good cause had been shown. The court acknowledged that the declaration of Mr. Nathan showed that he had been involved "in a heavy practice in other matters up North and was not present in this area." However, the court also stated: "I do believe that counsel for the plaintiffs in this case was dilatory in not pursuing actively the cause of action that had been stated."

■ In any event, even assuming the trial court originally concluded that good cause was shown for the delay, it was not bound by its earlier conclusions when it granted the motion for reconsideration. Not only had the court informed the parties at the hearing on the motion for clarification that it had intended to deny the motion without prejudice, but when it granted defendant's motion for reconsideration, "[its] power then to weigh the conflicts was the same as upon first consideration thereof. In other words, the power of the court to resolve the conflicts was not exhausted by its conclusions on the order of denial, but it had the power to reexamine the evidence and arrive at a different conclusion, if it thought the ends of justice would be best served thereby." (*Harth* v. *Ten Eyck, supra,* 16 Cal.2d at pp. 833-834.)

Plaintiff's substantive contention that he established justification for the protracted delay in serving defendant and taking steps to advance the case toward trial ignores the express finding of the court to the contrary recited in the judgment. ■ The sole justification advanced for the two-year-four-month delay in serving the sole defendant and the two-year-six-month delay in taking any steps whatever to advance the case toward trial was that Mr. Nathan, the attorney who signed the complaint, and Mr. Cohen, one of the other attorneys named as attorneys of record, both of whom were also on the legal staff of UFW, were so busy in representing UFW and related clients in litigation and legislative advocacy that they had no time to serve defendant or otherwise pursue this lawsuit.[10] ■ It is true that a number of cases have indicated that a court may consider as a factor in justification of prosecutorial delay an exceptional press of business or burdensome workload on plaintiff's

---

[10]A declaration executed by Mr. Nathan on January 26, 1977, reads in relevant part: "The hearing on the prayed-for preliminary injunction [in another action initiated by Larson against UFW under the Jurisdictional Strike Act] commenced on May 28, 1974 and did not end until on or about June 30, 1974. I was approached by the plaintiffs during this time[*] and the complaint herein was filed on May 28, 1974. Immediately after the conclusion of the hearing, I moved to Salinas, where I have maintained my offices, and became counsel in criminal and other matters. During the succeeding months, I was occupied with the demand imposed upon me in the course of representation of defendants in criminal matters, my representation of the UFW in relation to strike activities and resulting injunction hearings and participation in the drafting of statutory language which was offered in the course of the Legislature's consideration of an agricultural labor relations act in 1974 and 1975. These multi-faceted responsibilities placed large demands upon my time, requiring, at times, sixty to seventy hour weeks; my associate, Jerome Cohen, was similarly occupied.

"The enactment of the Agricultural Labor Relations Act of 1975 placed an additional demand upon my time. In addition to the representation of the UFW and farm workers in proceedings before the Agricultural Labor Relations Board, I also was counsel in

---

*The complaint signed by Mr. Nathan bears the date April 13, 1974.

attorney and his law firm. (See, e.g., *Woolfson v. Personal Travel Service, Inc., supra,* 3 Cal.3d at p. 912, fn. 2; *Denham v. Superior Court, supra,* 2 Cal.3d at pp. 560, 561, 564-565; *United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra,* 87 Cal.App.3d at pp. 229, 230, 236-237; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at pp. 557, 562; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at pp. 928, 930.) In all of the cited cases, however, the unusual press of business or burdensome workload of the plaintiff's attorney or his law firm was only one among several factors justifying the delay. One of the purposes of the statutory provision permitting dismissal for failure to prosecute an action to trial within two years is to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice—a matter of significance not only to the parties involved in the particular lawsuit but to the public as well. (See *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at p. 558; *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 22-23; *Sprajc* v. *Scandinavian Airlines System, Inc., supra,* 240 Cal.App.2d at p. 938; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 933.) This statutory purpose relating to the prompt administration of justice has taken on added significance in the wake of the law explosion and the resulting backlog of cases in the courts. An attorney owes an obligation not only to his client but also to the courts and the justice system not to undertake legal representation in matters unless he has adequate time to pursue the matter with reasonable diligence. When an attorney takes on more than he can properly handle, he jeopardizes both his client's cause and the public interest in sound and efficient administration of justice.

In any event, while the press of business of two of plaintiff's attorneys was a factor to be considered by the trial court, the court was not on that account required to deny defendant's motion to dismiss. Notwithstanding that Mr. Nathan and Mr. Cohen may have been very busy representing the UFW and related clients in very, very important judicial and legislative advocacy, the trial court was fully justified in concluding that their busyness did not constitute good cause for the failure to serve the sole defendant for 28 months or the failure to take any action to prosecute the case to trial until defendant moved to dismiss, 30 months after suit was filed.

numerous criminal cases against organizers for the UFW arrested in the course of labor organizing activities.

"As is apparent from the above recitation, during the period since the filing of the within action I have been engaged in a number of activities requiring all of my time. Any delay in the prosecution of the within action derives from such demands and not from deliberate dilatory conduct."

In the first place, the declaration of Attorney Charles Field filed in support of the renewed motion to dismiss avers that in the last week of May and the month of June 1974, immediately after the complaint in this action was filed, Mr. Nathan was present in the Indio branch of the Riverside Superior Court on no less than 17 occasions in connection with proceedings by Mr. Larson for a preliminary injunction against the UFW in an action filed by Larson under the Jurisdictional Strike Act; that on all or almost all of these occasions Mr. Larson was personally present in court; and that at no time did Mr. Nathan make any attempt to serve Mr. Larson with the summons and complaint in the instant case or mention the pendency of the action to counsel. In addition, defendant presented declarations indicating that the legal and paralegal staff of UFW was quite sizable.[11] There was no evidence that the instant lawsuit is unusually complex or difficult or that Mr. Nathan or Mr. Cohen were uniquely qualified to serve process upon Mr. Larson or to prosecute the action. There was no showing that there was any special relationship between plaintiff and Mr. Nathan. In fact, in his deposition, Mr. Lopez stated he did not even know Mr. Nathan. Thus, the court could rationally conclude that there were a number of attorneys and paralegal assistants available to take steps to serve defendant and advance the case toward trial and that the two-year-six-month delay was unreasonable and unjustified. It is the plaintiff's duty to exercise diligence at every stage of the proceeding to expedite the case to a final determination. (*Lowe* v. *Thomas,* 11 Cal.App.3d 867, 870 [90 Cal.Rptr. 202]; *Price* v. *Grayson, supra,* 276 Cal.App.2d at p. 55; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 929; *Gunner* v. *Van Ness Garage, supra,* 150 Cal.App.2d at p. 347.)

Plaintiff's assertion that defendant failed to show any adverse consequence or prejudice to him from plaintiff's delay is incorrect. ■ In the first place, there is authority for the proposition that prejudice is inherent in protracted delay and will be presumed when such delay is unjustified. (E.g., *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at p. 23; *Daley* v. *County of Butte, supra,* 227 Cal.App.2d at pp. 390-391; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 929; *Bonelli* v. *Chandler,* 165 Cal.App.2d 267, 275 [331 P.2d 705].)

---

[11]There was some dispute as to just how large the legal staff of UFW was before and after the enactment of the Agricultural Labor Relations Act in the summer of 1975. Admittedly, thereafter the staff became quite sizable. Even before that, however, the evidence indicates the staff consisted of a number of attorneys. In addition, there was no evidence concerning any inability on the part of Attorney Engelhardt to take steps to prosecute the action, and he was one of the attorneys named as plaintiffs' attorneys on the complaint.

Although the court in the *Gleneagle* decision questioned the continued vitality of "this 'presumption of prejudice' "[12] (62 Cal.App.3d at p. 563) and while the court in the *United Farm Workers* case, citing *Gleneagle* as its sole authority, stated flatly that ". . . the trial court may not presume prejudice simply by the passage of time," (87 Cal.App.3d at p. 236), we are persuaded that the notion that prejudice to the defendant inheres in protracted delay has a sound basis and merits continued recognition, particularly in a case like that at bench. ■■■ In this case the complaint purports to state a cause of action for wrongful discharge from employment, and the remedies sought by plaintiff are an injunction to compel reinstatement and damages for loss of wages at $50 per day on a continuing basis. The defendant should not be required to suffer for a period of time greatly prolonged by the plaintiff's unjustified neglect the uncertainty whether or not he will be required to reemploy the plaintiff. The allegations necessary to support a request for injunctive relief bespeak the desirability of early trial. One of the factors the court may consider in exercising its discretion is the nature of the case. (Cal. Rules of Court, rule 203.5(e);[13] see *Mori* v. *Mori,* 171 Cal. 79, 81-82 [151 P. 1136].)

Also significant in the case at bench is the nature of the delay—a two-year-four-month delay in serving the sole defendant. Delay in effecting service constitutes a particularly pernicious form of delay in terms of potential prejudice, for the defendant during the period of that

---

[12]The *Gleneagle* court's conclusion on this point was stated as follows: "The penalty of dismissal against a dilatory plaintiff should be exercised with the utmost care: and where it appears that the plaintiff has a good cause of action. that plaintiff has made some showing of excuse for delay: and where defendant does not.claim actual prejudice and has waited until the last possible moment to file a motion to dismiss, the ends of substantial justice are best met by a preference for the policy of favoring trials on the merits as contrasted with that policy which favors presumptions of prejudice." (62 Cal.App.3d at p. 563.) We fully agree.

[13]Subdivision (e) of rule 203.5 of the California Rules of Court reads: "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process: the extent to which the parties engaged in any settlement negotiations or discussions: the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party: the nature and complexity of the case: the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case: the nature of any extensions of time or other delay attributable to either party: the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial: whether the interests of justice are best served by dismissal or trial of the case or by imposing conditions on its dismissal or trial: and any other fact or circumstance relevant to a·fair determination of the issue."

delay may be unaware that the action has been filed and thus not alerted to the necessity for making discovery, interviewing witnesses and preserving evidence essential to his defense. Even if witnesses do not become unavailable, their memories of details such as times and dates and the specific words used in critical conversations will fade. Although in the case at bench there was no express averment in the declarations filed in support of the motion to dismiss that defendant was unaware of the pendency of the action, the declaration executed by Attorney Field strongly suggests that that was true, and the great potential for prejudice to a defendant in such circumstances was pointed out to the trial court in the memoranda of points and authorities submitted by defendant.

Moreover, the trial court expressly indicated in the judgment that it found that defendant was adversely affected by plaintiff's delay because plaintiff was claiming continuing damages of $50 per day on account of lost wages. Plaintiff contends that in so concluding the court erroneously failed to take into consideration plaintiff's duty to mitigate damages by seeking other employment. It is plaintiff, however, not the court, that has erred in respect to this point. It is no doubt true that plaintiff had a duty to mitigate damages by accepting other available employment; however, in the event of trial, defendant would have borne the burden of proving that the claimed damages were avoidable. (See *Parker* v. *Twentieth Century-Fox Film Corp.*, 3 Cal.3d 176, 181-182 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615] and authorities there cited; Cal. Attorney's Damages Guide (Cont.Ed.Bar 1974) § 1.35, p. 24.)

 Finally, with respect to prejudice, plaintiff asserts that the limitations period applicable to his cause of action was three years because the action derives from a statute (cf. Lab. Code, § 923), and he argues that inasmuch as service was effected and diligent prosecution commenced prior to the expiration of three years from the date of plaintiff's discharge, defendant had no cause to complain of the protracted delay because plaintiff could lawfully have chosen not to file the action at all until the very end of the three-year limitations period. This precise argument was considered and rejected in *Sprajc* v. *Scandinavian Airlines System, Inc., supra*, 240 Cal.App.2d at pp. 938-939. (Also cf. *Bonelli* v. *Chandler, supra*, 165 Cal.App.2d at pp. 276-278.) Rightly so. While we would not go so far as to say a trial court is precluded from considering the length of the delay in comparison to the applicable statute of limitations, acceptance of plaintiff's argument would effectively countermand the statute authorizing discretionary dismissal within a two-year period in any case in which the delay in prosecution ended

before the applicable period of limitations expired. The Legislature is, of course, aware that it has prescribed limitation periods of three years, four years, and longer. Nevertheless, it has seen fit to enact Code of Civil Procedure section 583, subdivision (a) authorizing the court to dismiss an action when it has not been prosecuted to trial within two years if in the court's discretion that would best serve the ends of justice. Had the Legislature intended that prosecutorial delay prior to the running of the applicable limitations period should not serve as the basis for discretionary dismissal, it would not have enacted Code of Civil Procedure section 583, subdivision (a) as it did.

While it is true that an order granting a motion to dismiss for dilatory prosecution will be more closely scrutinized on review than one denying the motion (*City of Los Angeles v. Gleneagle Dev. Co., supra,* 62 Cal.App.3d at p. 561; *Daley v. County of Butte, supra,* 227 Cal.App.2d at pp. 389-390), nevertheless the trial court exercises a wide discretion in ruling on a motion to dismiss under Code of Civil Procedure section 583, subdivision (a) and its determination will be reversed only upon a showing of manifest abuse of discretion resulting in a miscarriage of justice. (*Sanborn v. Chronicle Pub. Co., supra,* 18 Cal.3d at pp. 416-417; *Denham v. Superior Court, supra,* 2 Cal.3d at pp. 563-564; *Price v. Grayson, supra,* 276 Cal.App.2d at p. 53; *Sprajc v. Scandinavian Airlines System, Inc., supra,* 240 Cal.App.2d at p. 937.) The discretion to be exercised is that of the trial court, not that of the appellate court. (*Knight v. Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 929; *Gunner v. Van Ness Garage, supra,* 150 Cal.App.2d at p. 347.) Discretion is abused only when the court exceeds the bounds of reason, all of the circumstances before it being considered. (*Denham v. Superior Court, supra,* 2 Cal.3d at p. 566; *City of Los Angeles v. Gleneagle Dev. Co., supra,* 62 Cal.App.3d at pp. 560-561; *Knight v. Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 929.)

In the case at bench plaintiff has not demonstrated any abuse of discretion on the part of the trial court. Plaintiff's failure to serve the sole defendant for a period of two years and four months after the action was filed, in the absence of any showing that defendant was unavailable for service and in view of the presence of the attorney who signed the complaint and filed the action in the same courtroom that defendant was in more than a dozen times in the five weeks immediately after the action was filed, constituted prima facie a sufficient basis for dismissal. (See *Anderson v. Nawa,* 25 Cal.App. 151, 154 [143 P. 55]; see also *Sanborn v. Chronicle Pub. Co., supra,* 18.Cal.3d at p. 418; *Moore v. El Camino Hosp.*

*Dist., supra,* 78 Cal.App.3d at p. 664; *Price* v. *Grayson, supra,* 276 Cal.App.2d at pp. 54-55; *Sprajc* v. *Scandinavian Airlines System, Inc., supra,* 240 Cal.App.2d at p. 938; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 930; *Gunner* v. *Van Ness Garage, supra,* 150 Cal.App.2d at p. 348; *Sawyer* v. *Palmer, supra,* 121 Cal.App.2d at p. 371.) Plaintiff's continued failure to take any action to move the case toward trial after defendant was served was not explained. The plain and simple fact is that, aside from serving defendant two years and four months after the complaint was filed, plaintiff took no action whatever in the case until defendant filed his motion to dismiss for dilatory prosecution. ■ While the adverse effects upon defendant resulting from plaintiff's delay may not have been overwhelming, there were some such effects and, considering the nature of the case, the relief sought, the nature and length of the delay and lack of justification therefor, the court did not abuse its discretion in dismissing the action.

■ Nor will dismissal of the action necessarily result in a miscarriage of justice. As noted in several of the decided cases, if the plaintiff's action had merit, he has a remedy against his attorneys. (See *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at p. 22; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at p. 560.)

*Consideration of Irrelevant Facts*

Plaintiff contends the statements of the court (see fns. 7 and 8, *ante*) reveal it considered three irrelevant facts: the voluntary dismissal of the action by Mr. Perez, plaintiff's allegation in the complaint that damages continued to accrue at $50 per day, and the failure of plaintiff to present any evidence that he was not employed or employable as a farm laborer during the pendency of the action. The last-mentioned fact was mentioned by the court only in the unsigned minute order granting the motion to dismiss, which constituted nothing more than the court's opinion, tentative at that. It was followed by a formal, signed judgment dismissing the action and reciting a number of the court's findings. The propriety of attempting to utilize the court's opinion to impeach its judgment is doubtful to say the least. ■ It is, of course, proper to utilize statements of the court or the court's opinion to assist in resolving an ambiguity in the judgment. (See *Bailey* v. *Fosca Oil Co.,* 180 Cal.App.2d 289, 294 [4 Cal.Rptr. 474]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, p. 4221.) However, the general rule that the oral statements or the opinion of the court may not be used to impeach its orders or judgment (*Yarrow* v. *State of California,* 53 Cal.2d 427, 438 [2

Cal.Rptr. 137, 348 P.2d 687]; *DeCou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444]; *Rice* v. *Arden Farms Co.,* 199 Cal.App.2d 349, 358 [18 Cal.Rptr. 863]) is based on policy considerations important to the proper administration of justice. As the court stated in *DeCou* v. *Howell, supra*: "The deliberations of the court are conclusively merged in the judgment. The findings of fact and conclusions of law constitute the decision which is the final, deliberate expression of the court. To hold that oral or written opinions or expressions of judges of trial courts may be resorted to to overturn judgments would be to open the door to mischievous and vexatious practices. Neither a juror nor a judge is permitted to impeach his verdict or judgment." (190 Cal. at p. 751.) These principles would appear to be particularly applicable in the case at bench, for after the formal judgment was signed and entered, plaintiff unsuccessfully attacked it as being "not in conformity" with the minute order.

■ It is true, of course, that consideration of the trial court's statement of reasons has been approved in situations where it constitutes the only ground upon which a judgment or order may be affirmed. (*Yarrow* v. *State of California, supra,* 53 Cal.2d at p. 438.) However, in the case at bench the court expressly stated in the judgment of dismissal its finding that "[p]laintiff has not shown sufficient or good cause for the lengthy delay." That alone was a sufficient basis for the judgment of dismissal. (See *Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d at p. 418; *Moore* v. *El Camino Hosp. Dist., supra,* 78 Cal.App.3d at p. 664; *Price* v. *Grayson, supra,* 276 Cal.App.2d at pp. 54-55; *Sprajc* v. *Scandinavian Airlines System, Inc., supra,* 240 Cal.App.2d at p. 938; *Knight* v. *Pacific Gas & Elec. Co., supra,* 178 Cal.App.2d at p. 930; *Gunner* v. *Van Ness Garage, supra,* 150 Cal.App.2d at p. 348; *Sawyer* v. *Palmer, supra,* 121 Cal.App.2d at p. 371.)

In addition, while we agree that the question whether plaintiff was unemployed or unemployable during the pendency of the action was largely irrelevant to the problem confronting the court, it appears that plaintiff has misinterpreted the reason the court mentioned the lack of evidence concerning these matters. In her declaration dated August 22, 1977, in opposition to the renewed motion to dismiss, Attorney Mocine stated: "He [plaintiff Lopez] is a farm worker, does not speak English and has a very low income. If he is not allowed a trial on the merits herein, he will be without a remedy." Although in our view the facts thus stated were basically irrelevant to the conclusion drawn by the declarant, the court's comment concerning the lack of evidence as to plaintiff's not being employed or employable while the action was pending was

apparently intended to be responsive to the quoted statement in Attorney Mocine's declaration.[14] As already noted, this matter was not mentioned in the judgment. (See fn. 8, *ante.*)

■ Plaintiff's contention that his claim of $50 per day in continuing damages for loss of wages was irrelevant to the determination to be made by the trial court is incorrect. As previously discussed, the court was permitted to consider the nature of the case, and, since defendant would have had the burden of proof at trial to show the claimed damages were avoidable, plaintiff's claim of continuing damages of $50 per day was related to the question of prejudice or the detrimental effect upon defendant of the delay.

■ We must agree with plaintiff, however, that the fact that plaintiff Perez had voluntarily dismissed the action was irrelevant to the determination the court was required to make. As plaintiff points out, there could have been any number of reasons for the voluntary dismissal of the action by Perez, and, even if it could be inferred from Perez' action that his claim lacked merit, it would not follow that Lopez' claim lacked merit. However, in view of the other valid reasons stated by the court, particularly its finding that the protracted delay was unreasonable and unjustified, we do not believe that the court gave any great weight to the fact that Perez had voluntarily dismissed the action nor that the court's mentioning that fact indicates it played any significant role in the determination. We decline to find cause for reversal in the court's mentioning in its orders this one irrelevancy.

*Failure to Consider Factors As Required by Rule 203.5*

Rule 203.5 of the California Rules of Court was promulgated by the Judicial Council, effective January 1, 1970, pursuant to authority granted by an amendment to Code of Civil Procedure section 583, subdivision (a). Subdivision (e) of the rule enumerates a number of factors the court must consider on a motion for dismissal under section 583, subdivision (a). (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at pp. 563-564, fn. 2; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at pp. 554-555.) One of the factors enumerated is "whether the interests of justice are best served by dismissal or trial of the case or by imposing conditions

---

[14]It was Attorney Mocine who argued the renewed motion to dismiss. The court's statement was: "[N]o evidence has been presented *to support the proposition* that Mr. Lopez, the Plff., has not been employed or employable as a farm laborer in the interim." (See fn. 7, *ante*; italics added.)

on its dismissal or trial." (See fn. 13, *ante.*) ▮ Plaintiff contends the trial court erred by failing to consider the possibility of imposing upon plaintiff a sanction less dire than dismissal of the action and, additionally, appears to contend that the trial court failed to consider whether dismissal would best serve the interests of justice. Both contentions are devoid of merit. The record is replete with statements of the court indicating that it had agonized over the question whether dismissal would best serve the interests of justice. The fact that plaintiff disagrees with the conclusion reached by the trial court in no way indicates that the court failed to consider how justice would best be served. In respect to the imposition of lesser sanctions, there is nothing in the record indicating that plaintiff suggested to the court any specific alternative or, indeed, the possibility of any such alternative, and there is nothing in the record indicating that the trial court failed to consider the possibility of imposing a lesser sanction. Presumably it did. (*Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 564; see also *Applegate Drayage Co.* v. *Municipal Court, supra,* 23 Cal.App.3d at p. 633.)

### Disposition

No abuse of discretion or other cause for reversal has been demonstrated. The judgment is affirmed.

McDaniel, J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 7, 1979. Bird, C. J., did not participate therein.